**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

IN RE:                                                    **Case No.: 26-40065**
           **JOSE ENCARNACION**                           **Chapter 7**

           **Debtor**

## MOTION FOR RELIEF FROM AUTOMATIC STAY

TO THE HONORABLE CHRISTOPHER J. PANOS:

Carrington Mortgage Services, LLC together with its successors and assigns ("Movant"),

hereby moves this Court pursuant to 11 U.S.C. § 362(d), for relief from the automatic stay, with

respect to certain real property of JOSE ENCARNACION ("Debtor"). In support, Movant

respectfully represents as follows:

1.      Debtor is the obligor pursuant to that certain promissory note (the "Note") dated

February 17, 2009, in the original principal amount of $240,562.00.  A copy of the Note is

annexed as Exhibit A.

2.      To secure the Note, Debtor executed in favor of, and delivered a mortgage to

Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Mackinac

Savings Bank, FSB (the "Mortgage", together with the Note and any other loan documents

executed in connection therewith, the "Loan Documents") dated February 17, 2009, and

encumbering the property located at 7 Lucian Street, Worcester, MA 01603 (the "Property").  A

copy of the Mortgage is annexed as Exhibit B.

3.      There is no other collateral to secure the Note.

4.      Movant is the current holder of the Loan Documents by virtue of the assignments

of mortgage annexed as Exhibit C.

5.      On January 22, 2026, Debtor filed a petition under Chapter 7 of the United States

Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.

6.      The plan requires the Debtor to make the monthly mortgage payments to Creditor pursuant to the terms of the Note.

7.      The deadline for objecting to Debtor's discharge is July 6,2026.

8.      As of June 1, 2026, the total amount due and owing pursuant to the Loan Documents was $237,967.45 in principal, accrued interest, late charges, miscellaneous fees, and attorneys' fee and costs.

9.      As of June 1, 2026, there is a contractual payment arrearage owing under the Loan Documents in the amount of $34,084.48.  This amount is exclusive of attorneys' fees, costs, and expenses in connection with this Motion.

10.     The regular monthly payment due at this time is approximately $2,429.33.

11.     The total amount of encumbrances on the Property is approximately $340,967.45, which includes the following encumbrances in addition to the Mortgage:

   a.  A Scheduled lien to Robert S. & Immelde Zebedayo in the amount of $103,000.00.

12.     Movant does have knowledge of a Declaration of Homestead recorded by the Debtor on February 17, 2009.

13.     The Debtor's Schedule A/B lists a fair market value for the Property in the amount of $581,900.00.

14.     For purposes of this Motion only, Movant asserts that the liquidation value of the Property is approximately $543,782.54, calculated at the Debtor's value less a reasonable realtor's fee of 6%; Deed Tax Stamps in the amount of $2,653.46 and real estate closing costs estimated to be $550.00.

15.     Counsel for Movant certifies compliance with MLBR 9013-1(b).

16.     Movant seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) for cause on the basis that the Debtor is in default of the payment obligations resulting in an arrearage owing under the Loan Documents.

**WHEREFORE,** Movant requests that the Court:

(1) grant relief from the section 362 automatic stay, and the stay imposed by Bankruptcy Rule of Procedure 4001(a)(4) for the purpose of exercising its various non-bankruptcy rights and remedies including, without limitation:

a. taking possession of the Property, obtaining a deed-in-lieu of foreclosure and/or foreclosing the Mortgage, and

b. taking such action as may be necessary to evict the Debtor or any occupant from the Property.

(2) order that the Trustee cease making any further distributions to the Movant.

(3) order such other and further relief as may be just and proper.

Dated: June 11, 2026

/s/Richard T. Mulligan
Jeffrey J. Hardiman, MA Bar No. 649855
Richard T. Mulligan, MA Bar No. 567602
Attorney for Creditor
BROCK & SCOTT, PLLC
3825 Forrestgate Drive
Winston Salem, NC 27103
Telephone: (844) 856-6646
Facsimile: (704) 369-0760
NEWENGLANDBKR@brockandscott.com

CERTIFICATE OF SERVICE

The undersigned does hereby certify that the Motion for Relief from Automatic Stay and the proposed Order were served upon the following parties by causing true and correct copies of the same to be sent via electronic notice or via first class mail postage pre-paid, as indicated, on June 11, 2026

**Via Electronic Notice**:

Richard King
Office of the U.S. Trustee
USTPRegion01.WO.ECF@USDOJ.GOV

Jonathan R. Goldsmith
67 Market Street
Springfield, MA 01103
Chapter 7 Trustee
trusteedocs1@gkalawfirm.com

Troy D Morrison, Esq.
Counsel to the Debtor
tmorrison@morrisonlawpc.net

**Via First Class Mail:**

Jose Encarnacion
7 Lucian Street
Worcester, MA 01603

City of Worcester
Tax Collector's Office
455 Main Street, City Hall Room 203
Worcester, MA 01608

Robert S. Zebedayo
21 Calumet Avenue
Worcester, MA 01606

Immelde Zebedayo
21 Calumet Avenue
Worcester, MA 01606

/s/Richard T. Mulligan, Esq.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:                                           Case No.: 26-40065
    JOSE ENCARNACION                   Chapter 7


    Debtor

## ORDER

This matter having come before the Court on the Motion for Relief from Automatic Stay (the "Motion") filed by Carrington Mortgage Services, LLC together with its successors and assigns ("Movant"), and good cause having been shown, and proper notice having been given, it is hereby

ORDERED, ADJUDGED AND DECREED

(1)    that the Motion is granted; and

(2)    that Movant is granted relief from the section 362 automatic stay and the stay imposed by Bankruptcy Rule of Procedure 4001(a)(4) for the purpose of exercising its rights under its agreements with the Debtor and under applicable law, including, without limitation, foreclosing the Mortgage, as defined in the Motion, encumbering the property located at 7 Lucian Street, Worcester, Massachusetts 01603, and bringing such action, including eviction proceedings, as may be appropriate, pursuant to state and federal law; and

(3)    that the Trustee is directed to cease making any further distributions to the Movant.


So Ordered this _____.


_____
United States Bankruptcy Judge

**EXHIBIT A**

Multistate                                **NOTE**

February 17, 2009

7 Lucian Street
Worcester, MASSACHUSETTS 01603
(Property Address)

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means

Mackinac Savings Bank, FSB, a federal savings bank
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
**TWO HUNDRED FORTY THOUSAND FIVE HUNDRED SIXTY-TWO AND NO/100**
Dollars (U.S. $240,562.00),
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FIVE** percent (**5.000%**) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time
Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on **April 1, 2009**. Any principal and interest remaining on the **1st day of March, 2039**, will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at

Mackinac Savings Bank, FSB
33333 W 12 Mile Road - Suite 202
Farmington Hills, MICHIGAN 48334
or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $1,291.39.
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Graduated Payment Allonge      ☐ Growing Equity Allonge      ☐ Other (specify)

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02
IDS, Inc.                          Page 1 of 2

Borrower(s) Initials _____

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **FIFTEEN** calendar days after the payment is due, Lender may collect a late charge in the amount of **THREE** percent **(3.000%)** of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
Jose A Encarnacion                    -Borrower                                                 -Borrower

_____
Witness:  Matthew S. Rousseau

Pay to the Order of
Affiliated Mortgage Company
Without Recourse

MACKINAC SAVINGS BANK, F.S.B.,
a federal savings bank

_____
Terry K. Fraser, Vice President

---

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02
IDS, Inc.                                        Page 2 of 2

Without recourse, pay to the order of Wells Fargo Bank, N.A.

Affiliated Mortgage Company

Dan Hastings, President

**Towd Point Master Funding Trust 2021-PM1**

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A.

By William R. Martin

William R. Martin
Vice President

# ALLONGE

**Loan Number:** ████████

Original Principal Amount:      $240,562.00
Dated:                         Febuary 17, 2009
Made By:                       Encarnacion Jose
Premises Secured:              7 Lucian St, Worcester, MA 01603

Pay to the Order of:

Without Recourse:

**By: Wells Fargo Bank, N.A.**

By:_____
    Name: Jennique N. Venable
    Title: Manager, Final Certification

# ALLONGE TO NOTE



This allonge makes reference to the following note:

Borrower: **JOSE ENCARNACION**

Loan #:

Loan Amount: **$240562.00**

Note Date: **2/17/2009**

Property Address: **7 LUCIAN ST WORCESTER MA 1603**

Pay to the Order of:
**Carrington Mortgage Services, LLC**

Without Recourse By:

**Ryan Marx- Analyst- Collateral Trade
U.S. Bank Trust National Association, as Trustee for Towd Point Master Funding
Trust 2021-PM1 by Carrington Mortgage Services, LLC as attorney in fact**

ENCARNACION
CARR

729KBC
BARCBANK-PRIV

# ALLONGE TO NOTE

This allonge makes reference to the following note:

Borrower: **JOSE ENCARNACION**

Loan #:

Loan Amount: **$240562.00**

Note Date: **2/17/2009**

Property Address: **7 LUCIAN ST  WORCESTER MA 1603**

Pay to the Order of:

Without Recourse By:

**Ryan Marx- Analyst- Collateral Trade
Carrington Mortgage Services, LLC**

ENCARNACION
CARR

729KBC
BARCBANK-PRIV

10

**CONFIDENTIAL**

**EXHIBIT B**



Bk: 43810 Pg: 372
Page: 1 of 9  02/17/2009 03:36 PM  WD

# MORGAGE

This Instrument was prepared by:
**Judi Young**
**Mackinac Savings Bank, FSB**
**33333 W 12 Mile Road - Suite 202**
**Farmington Hills, MICHIGAN 48334**

WHEN RECORDED, RETURN TO:
**Mackinac Savings Bank, FSB**
**33333 W 12 Mile Road - Suite 202**
**Farmington Hills, MICHIGAN 48334**

MIN:

_____ (Space Above This Line For Recording Data) _____

**State of Massachusetts**

FHA Case Number:

Broker and/or loan originator information, if applicable:
**Originator: Mackinac Savings Bank, FSB**
**33333 W 12 Mile Road - Suite 202**
**Farmington Hills, MI 48334**
Mortgage Loan Originator's license number is:

[X]  No broker was involved in the mortgage.     [ ]  No loan originator was involved in the mortgage.

THIS MORTGAGE ("Security Instrument") is given on **February 17, 2009**.
The Mortgagor is **Jose A Encarnacion**

("Borrower").

This Security Instrument is given to **Mortgage Electronic Registration Systems, Inc. ("MERS")**, (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026**, tel

**Mackinac Savings Bank, FSB, a federal savings bank,**                    ("Lender")
is organized and existing under the laws of **United States of America**,
and has an address of **33333 W 12 Mile Road - Suite 202, Farmington Hills, MICHIGAN 48334**.

7 Lucian Street, Worcester, MA

---

**FHA Massachusetts Mortgage  with MERS- 4/96**                                      Amended 2/01

Page 1 of 7

IDS, Inc.                                                                    Initials _____



Bk: 43810 Pg: 373
CONFIDENTIAL

Borrower owes Lender the principal sum of **TWO HUNDRED FORTY THOUSAND FIVE HUNDRED SIXTY-TWO AND NO/100,** Dollars (U.S. **$240,562.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **March 1, 2039.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in **Worcester** County, Massachusetts:

   **See Attached Exhibit 'A'**

Parcel ID Number:

which has the address of          **7 Lucian Street**
                                  **Worcester, MASSACHUSETTS 01603**                    ("Property Address");

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.
   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.
   **1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
   **2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
   Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements

---

**FHA Massachusetts Mortgage with MERS- 4/96**                                        **Amended 2/01**

Page 2 of 7

IDS, Inc.                                                                    Initials

CONFIDENTIAL

Bk: 43810 Pg: 374

or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply

---

**FHA Massachusetts Mortgage with MERS- 4/96**

Page 3 of 7

Amended 2/01

IDS, Inc.

Initials

CONFIDENTIAL

with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

---

**FHA Massachusetts Mortgage with MERS- 4/96**

IDS, Inc.

Amended 2/01

Initials

CONFIDENTIAL

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the

---

CONFIDENTIAL

Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as**

---

FHA Massachusetts Mortgage with MERS- 4/96

Page 6 of 7

Amended 2/01

IDS, Inc.

Initials

**CONFIDENTIAL**

provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
(Check applicable box(es)).

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Adjustable Rate Rider |
| ☐ Planned Unit Development Rider | ☐ Growing Equity Rider | ☒ Other: **Exhibit A - Legal Description** |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____
Matthew S. Rousseau

_____ (Seal)                    _____ (Seal)
Jose A Encarnacion          -Borrower                                                   -Borrower

**COMMONWEALTH OF MASSACHUSETTS,** ___Worcester___ **County ss:**

On this __17th__ day of __February, 2009__, _____, before me, the undersigned notary public, personally appeared **Jose A Encarnacion**, proved to me through satisfactory evidence of identification, which was/were __Driver's Licenses__, to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

(Seal)

_____
Signature of Notary Public (Printed or Typed)
Matthew S. Rousseau
My commission expires:   4/23/2010

Bk: 43810 Pg: 379

# CONFIDENTIAL

## Exhibit A - Property Description

| | |
|---|---|
| Closing date: | **February 17, 2009** |
| Borrower(s): | **Jose A. Encarnacion** |
| Property Address: | **7 Lucian Street, Worcester, Massachusetts 01603** |

**The land in Worcester with the building thereon, bounded and described as follows:**

**PARCEL I**

**Being Lots 6 and 7 on a plan of lots recorded with Worcester District Registry of Deeds, Plan Book 23, Plan 41 bounded and described as follows:**

**BEGINNING at a bound in the westerly line of Lucian Street distant two hundred seventy-nine and twenty-four hundredths (279.24) feet from the northerly line of Main Street;**

**THENCE running southwesterly in line drawn at right angles to the westerly line of Lucian Street one hundred and ninety-five hundredths (100.95) feet to a bound at land now or formerly of McDonnell;**

**THENCE North 10 degrees 42' West ninety-four and fifty-seven hundredths (94.57) feet to a stone bound set in the bank;**

**THENCE northeasterly by the bank and by land of said McDonnell eighty-one and six tenths (81.6) feet to a stone bound in the westerly line of Lucian Street;**

**THENCE southeasterly by the westerly line of Lucian Street one hundred six and fifteen hundredths (106.15) feet to the point of beginning.**

**CONTAINING 8,926 square feet of land more or less.**

**PARCEL II**

**Situated at the northwesterly end of Lucian Street, bounded and described as follows:**

**BEGINNING at a point in the line between land now or formerly of McDonnell and land now or formerly of the Estate of Uria Stone about two hundred eighty-three and thirteen hundredths (283.13) feet from the northwesterly line of Main Street, which is distant southwesterly about one hundred and ninety-five hundredths (100.95) feet from the southwesterly line of Lucian Street in a line drawn at right angles thereto and is also the southeasterly corner of Lot 7 and the northwesterly corner of Lot 8 on the plan above referred to in Parcel i;**

**THENCE South 66 degrees 45' West to the Shore of Church Pond, so-called at high water mark;**

**THENCE by the high water mark of said Pond northwesterly and turning and running northwesterly to land now or formerly of Scannell;**

**CONFIDENTIAL**

THENCE southeasterly by land of said Scannell to a corner at land now or formerly of Ives on top of the bank;

THENCE South 56 degrees 55' West running along the top of the bank by land of said Kves, the northwesterly end of Ives Streetand land now or formerly of Baird about two hundred twenty-six and sixty-six hundredths (226.66) feet to a corner;

THENCE turning and running South 10 degrees 42' East or by the line between land now or formerly of the Estate of James McDonnell and land of said Stone about ninety-four and fifty-seven hundredths (94.57) feet to the point of beginning.

Being the same premises conveyed to the mortgagor by deed dated February 6, 2009 and recorded with the Worcester District Registry of Deeds in Book _43810_ , Page _369_ .

ATTEST: WORC. Anthony J. Vigliotti, Register

Total Pages:    2

Bk: 47742 Pg: 189
Page: 1 of 2 08/23/2011 11:08 AM  WD

## EXHIBIT C

Property Address:
7 LUCIAN STREET, WORCESTER, MA,
01603

## CORPORATE ASSIGNMENT OF MORTGAGE

Worcester South, Massachusetts
SELLER'S SERVICING█████████   "ENCARNACION"
INVESTOR'S LOAN #:███████
POOL #:████████
OLD SERVICING████████

MERS #:███████████   SIS #: 1-888-679-6377

Date of Assignment: August 17th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
MACKINAC SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND
ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: JOSE A ENCARNACION, To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR MACKINAC SAVINGS BANK, FSB, A FEDERAL SAVINGS
BANK, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 02/17/2009 Recorded: 02/17/2009 in Book/Reel/Liber: 43810 Page/Folio: 372 as
Instrument No.: 2009 00015536 In the County of Worcester South, State of Massachusetts.

Property Address: 7 LUCIAN STREET, WORCESTER, MA  01603

    KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths
DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $240,562.00 with interest, secured
thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the
full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor
hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MACKINAC
SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS
On  8-18-2011

By: _____
    Gwen Alden            ,
Assistant  Secretary

Recording Requested By:
WELLS FARGO BANK, N.A.
When Recorded Return To:
DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On _8-18-2011_, before me, _Julie Ann Prieto_, a Notary Public in and for Dakota in the State of Minnesota, personally appeared _____**Gwen Alden**_____, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

JULIE ANN PRIETO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

Notary Expires: 1/31/2014

(This area for notarial seal)

# Worcester South District Registry of Deeds
# Electronically Recorded Document

### This is the first page of the document – Do not remove

## Recording Information

| | |
|---|---|
| Document Number | : 47508 |
| Document Type | : ASM |
| Recorded Date | : April 07, 2021 |
| Recorded Time | : 09:14:12 AM |
| | |
| Recorded Book and Page | : 64874 / 197 |
| Number of Pages(including cover sheet) | : 2 |
| Receipt Number | : 1328517 |
| Recording Fee | : $105.00 |

Worcester South District Registry of Deeds
Kathryn A. Toomey, Register
90 Front St
Worcester, MA 01608
(508) 798-7717

RECORDING REQUESTED BY:
**WELLS FARGO BANK, N.A.**
**2701 WELLS FARGO WAY**
██████
**MINNEAPOLIS, MN 55440-1629**
AND WHEN RECORDED MAIL TO:
**WELLS FARGO BANK, N.A.**
**MAC: N9408-05C**
**PO BOX 1629**
**MINNEAPOLIS, MN 55440-1269**
**ATTN: ASSIGNMENT TEAM**

---

### ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **WELLS FARGO BANK, N.A.** , **1 HOME CAMPUS , DES MOINES, IA 50328** , by these presents does convey, assign, transfer and set over to: **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST 2021-PM1 , C/O FIRSTKEY MORTGAGE, LLC 900 THIRD AVENUE, 5TH FLOOR, NEW YORK, NY 10022** , the described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$240562.00** is recorded in the State of **MASSACHUSETTS** , County of **Worcester Southern** Official Records, dated **02/17/2009** and recorded on **02/17/2009** , as Instrument No. **15536** in Book No. **43810** , at Page No. **372**
Original Mortgagor: **JOSE A ENCARNACION**
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR MACKINAC SAVINGS BANK, FSB, ITS SUCCESSORS AND ASSIGNS**
Property Address: **7 LUCIAN STREET WORCESTER, MA 01603**

Date: **04/06/2021**
**WELLS FARGO BANK, N.A.**
By:

*Juliane M Christensen*

JULIANE M CHRISTENSEN, Vice President Loan
Documentation
STATE OF MN
COUNTY OF Hennepin } s.s.

This instrument was acknowledged before me on **04/06/2021** by **JULIANE M CHRISTENSEN** as **Vice President Loan Documentation** of **WELLS FARGO BANK, N.A.**, as the free act and deed of **WELLS FARGO BANK, N.A.**

*J R Anderson*

JENNIFER RAE ANDERSON, Notary Public
Commission # ██████
My Commission Expires: **01/31/2025**

> JENNIFER RAE ANDERSON
> NOTARY PUBLIC - MINNESOTA
> MY COMMISSION EXPIRES 01/31/2025

4486b9b7

ATTEST: WORC Kathryn A. Toomey, Register

# Worcester South District Registry of Deeds
# Electronically Recorded Document

## This is the first page of the document – Do not remove

## Recording Information

| | |
|---|---|
| Document Number | : 134932 |
| Document Type | : ASM |
| Recorded Date | : December 22, 2022 |
| Recorded Time | : 01:23:45 PM |
| | |
| Recorded Book and Page | : 68643 / 85 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 1489298 |
| Recording Fee | : $105.00 |

Worcester South District Registry of Deeds
Kathryn A. Toomey, Register
90 Front St
Worcester, MA 01608
(508) 798-7717

PREPARED BY:
C. Riggsby
RETURN TO:
C. Riggsby
2860 Exchange Blvd. # 100
Southlake TX 76092

**Assignment of Mortgage**          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST 2021-PM1 1600 SOUTH DOUGLASS ROAD, SUITE 200-A, ANAHEIM CA 92806 (Assignor)** by these presents does assign and set over, without recourse, to **CARRINGTON MORTGAGE SERVICES, LLC  1600 S DOUGLASS RD, STE 200-A, ANAHEIM CA 92806 (Assignee)** the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **JOSE A ENCARNACION** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS NOMINEE FOR MACKINAC SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK ITS SUCCESSORS AND ASSIGNS.    Said mortgage **Dated: 2/17/2009** is recorded in the **State of MA, County of Worcester  (Southern District-Recorded Land)** on 02/17/2009, **Book 43810 Page 372 AMOUNT: $ 240,562.00**       Property Address: 7 LUCIAN STREET, WORCESTER, MA  01603
Furthermore, it is unknown if a mortgage loan originator was involved in the loan origination and it is unknown if a mortgage broker was involved in the loan origination.

IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper signatory. Executed on: December 22, 2022
U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST 2021-PMI
BY CARRINGTON MORTGAGE SERVICES, LLC AS ITS ATTORNEY-IN-FACT

By: _H. Scott_

Heather Scott, Vice President

**The Power of Attorney was filed in Los Angeles County, California on 11/04/2021 in Book 66456 Page 178.**

MA Worcester  (Southern District-Recorded Land)   CMS/AOM/BANASALE/KTOUK735

PREPARED BY:
C. Riggsby
RETURN TO:
C. Riggsby
2860 Exchange Blvd. # 100
Southlake TX 76092


State of TX, County of Tarrant
On 12/22/2022, before me, the undersigned, Heather Scott, personally known to me, who acknowledged that he/she is Vice President of/ BY CARRINGTON MORTGAGE SERVICES, LLC AS ITS ATTORNEY-IN-FACT for U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST 2021-PM1 and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR TOWD POINT MASTER FUNDING TRUST 2021-PM1.

C. Lafferty

**C. LAFFERTY**
My Notary ID # 11593634
Expires November 30, 2026

Notary public, C. Lafferty
My commission expires: November 30, 2026

MA Worcester (Southern District-Recorded Land)   CMS/AOM/BANASALE/KTOUK735

ATTEST: WORC Kathryn A. Toomey, Register